Laurence Rosen, Esq.
**THE ROSEN LAW FIRM, P.A.**
236 Tillou Road
South Orange, NJ 07079
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES KIM, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) Case No.: _____ ) ) **CLASS ACTION COMPLAINT** ) |
| vs. | ) JURY TRIAL DEMANDED ) ) |
| SAMSUNG ELECTRONICS AMERICA, INC., | ) ) ) |
| Defendant. | ) ) ) |

Plaintiff James Kim, (the "Plaintiff"), individually and on behalf of all others similarly situated, by his undersigned counsel, alleges the following based upon personal knowledge as to his own acts and upon information and belief as to all other matters. Plaintiff's information and belief is based upon the investigation conducted by counsel.

## NATURE OF THE ACTION

1.     Plaintiff brings this action against Samsung Electronics America, Inc. ("Defendant" or "Samsung") on his own behalf and as a class action on behalf of all others who purchased a new plasma, liquid crystal display ("LCD"), or digital light processing ("DLP") television manufactured, distributed or sold by Samsung (the "Class") under the Samsung brand name (the "Television" or "Televisions") in the United States on or after October 1, 2004 through the date upon which Defendant ceases the conduct complained about herein (the "Class Period") whose Television suffers from the design defect described herein. Any claims that Plaintiff or any member of the Class may have against Defendant for personal injuries are expressly excluded from this action.

2.     Plaintiffs and the other Class members purchased Samsung branded Televisions that were priced from approximately $300 to $5000. Unbeknownst to Plaintiff and the Class, many of these Televisions suffer from a fatal design defect.

3.     Two of the major symptoms of this design defect are: (1) a failure of the defective Televisions to turn on in a prompt fashion; and (2) a clearly audible "clicking" noise – purportedly from the Televisions' power supply boards. The initial symptoms usually degrade into more serious issues, as the defective Samsung Televisions take longer and longer to turn on, and eventually fail to turn on altogether.   In addition, the defective Televisions also exhibit ancillary symptoms, such as blurred or distorted display images.

4.     These symptoms manifest themselves well before the Samsung branded Televisions can be reasonably expected to fail, and often shortly after the twelve (12) month "Parts and Labor Warranty" that comes standard with most of the effected Television models.

5.     Plaintiffs and the other Class Members were unaware when they purchased the Samsung branded Televisions that the Televisions suffer from a major defect (the "Design Defect") that eventually leads to the failure of a crucial component within said televisions – the power supply board (the "PSB").

6.     The Design Defect in the defective Televisions stems from the fact that Samsung failed to equip the PSBs of these televisions with capacitors that were suitable for the amount of electrical flow that they would reasonably be expected to encounter in the normal, day-to-day operation of said Televisions. Thus, as a result of the expected and standard electrical flow that powers the Samsung branded Televisions, the capacitors of these televisions begin to bulge, overheat, or otherwise deform. This leads to the symptoms described in the preceding paragraph, and eventually to the complete failure of the defective Televisions' PSBs – thereby rendering the televisions completely inoperable.

7.     Samsung has known about the Design Defect problem since at least 2004. There have been innumerable consumer complaints posted on the internet, articles published on industry-centric websites, and complaints taken at Samsung's

customer service call centers. In addition, upon information and belief, Samsung also knew about the Design Defect by virtue of its design and testing of at least some of the defective Televisions.

8.    Moreover, Samsung must possess clear and unadulterated knowledge of the Design Defect as it has undertaken a silent recall of at least some of the effected Television models. Consumer postings on the internet, a sampling of which is included below, indicate that Samsung customer service representatives are well aware of the Design Defect and its relation to defective capacitors. In addition, said postings indicate that Samsung is offering free-of-charge warranty extensions and/or repair service for certain adversely affected Television models.

9.    Nevertheless, despite its clear knowledge of the Design Defect, Samsung has failed to inform Plaintiff and the other members of the Class of the existence of this Design Defect – a clearly material fact – at the time of sale or after purchase. Furthermore, Samsung has failed to institute a proper recall for the defective Samsung branded Televisions, amend their standard warranties, and/or reimburse customers for the cost of repairing or replacing said Televisions. As a result of this wrongful and deceptive conduct, Samsung has improperly passed the expense of repairing or replacing the defective Televisions along to Plaintiff and the other members of the Class who purchased the defective Samsung branded Televisions.

10.   The defective Samsung branded Televisions, which, as described above, often fail shortly after their twelve month Parts and Labor Warranty expires, do not meet the standard lifespan numbers that Samsung *itself* projects for these Televisions. For example, in response to a questions posted on its website, Samsung states the following:

> The operational life span of an LCD TV screen is measured by its half-life. The half-life is defined as the length of time it takes for the LCD screen to loose [sic] 50% of its brightness. On average, Samsung LCD TV screens have an expected half-life of up to 60,000 operational hours.[1]

Thus, granting the generous assumption that the average LCD television is used 10 hours per day, 365 days a year, Samsung LCD television screens can be expected to possess half-lives of approximately 16 years. While this estimate pertains only to the lifespan of the actual television *screens*, it is clear that Samsung represents the average lifespan of a LCD television to be greater than the paltry one to two year lifespan of the more seriously affected Samsung branded Televisions; for it would be fruitless to claim that a television's LCD screen can last for more than 16 years when a crucial component of that same television, and thereby the television as a whole, can last for little more than 16 *months* – if not less.

---

[1] *See* http://ars.samsung.com/customer/usa/jsp/faqs/faqs_view_us.jsp?AT_ID=18111&PROD_ID =#prd_ia_cd#&PG_ID=-1&PROD_SUB_ID=0 (last accessed on November 3, 2010).

11.     Similarly, on its website, Samsung projects the full lifespan for a DLP television's lamp to be between 5,000 and 8,000 hours. Moreover, on the same page, Samsung states the following:

> When you replace the lamp, the TV operates at the same full performance level it did when it was new. This is because the DLP display doesn't physically age. Its elements do not deteriorate. This isn't true of any other display technology, because all other display devices deteriorate in picture quality with age.[2]

Thus, assuming the same generous usage assumption as before, Samsung claims that a DLP television's lamp will last from approximately 1.4 to 2.2 years. However, as the preceding quote indicates, the lifespan of the actual DLP *television* is projected to be much longer, as the periodic replacement of the lamp purportedly leads to a near limitless display lifespan. In any case, it is clear that Samsung represents the lifespan of their DLP televisions to be significantly longer than the actual lifespans of the defective Samsung branded DLP Televisions.

12.     With respect to its plasma televisions, Samsung states the following:

> Current generation Samsung Plasma TVs with the Gen-5 display panel have, on average, half lives of 60,000 hours under normal operating conditions. *That's more than 27 years if you watch your Plasma TV six hours a day.*

> Older generation Samsung Plasma TVs with the Gen-4 display panel have, on average, half lives of 50,000 hours under normal operating conditions. *That's nearly 23 years if you watch your Plasma TV six hours a day.* [emphasis added][3]

---

[2] *See* http://ars.samsung.com/customer/usa/jsp/faqs/faqs_view_us.jsp?AT_ID=6152&PROD_ID =#prd_ia_cd#&PG _ID=-1&PROD_SUB_ID=0 (last accessed on November 3, 2010).
[3] *See* http://ars.samsung.com/customer/usa/jsp/faqs/faqs_view_us.jsp?AT_ID=18103&PROD_I D =#prd_ia_cd#&PG_ID=-1&PROD_SUB_ID=0 (last accessed  on November 3, 2010).

Again, even by its own usage estimates, Samsung represented the lifespan of its plasma televisions to be significantly greater than the actual lifespans of the defective Samsung branded plasma Televisions.

13.     Samsung, despite the fact that it knows of the fatal Design Defect in the above referenced Televisions, and despite the fact that it represented the lifespan of these Televisions to be significantly greater than they actually are, has failed to inform consumers of said Design Defect and its adverse effects on the lifespans of the defective Samsung branded Televisions. Indeed, Samsung has actively concealed this widespread defect from Plaintiff and the Class. If Plaintiff and the other Class members were aware of the Design Defect and its ramifications, they would have either not purchased the Televisions at all, or, at very least, would have only purchased them at severely reduced prices.

14.     By virtue of the facts alleged herein, Samsung has violated the laws governing, *inter alia*, breach of the implied warranty of merchantability and consumer fraud.

## PARTIES

15.     Plaintiff James Kim is a citizen and resident of Montgomery County, Pennsylvania. His address is 1703 Butler Pike, Ambler, Pennsylvania, 19002. On September 7, 2007, Plaintiff purchased a Samsung 46 inch hi-definition, 1080p

resolution LCD television, model number LN-T4661F, from the online retailer BeachCamera.com. Plaintiff paid approximately $1,900 for his television.

16.     Starting in November of 2009, Plaintiff's television began experiencing the symptoms emblematic of the Design Defect described above, and detailed more thoroughly below. Initially, his television began to emit clicking noises and delayed turning on.  Following this, said television started to take an inordinate amount of time to turn on (ranging from 10 to 20 minutes), followed blurred and scrambled pixels. While Plaintiff's television has yet to completely fail, it now often fails to turn on, and when it does, it displays a blurred image – and sometimes no image at all.

17.     Thus, as a result of his purchase of a Samsung branded Television that possessed the Design Defect whose existence was known by Samsung, but not represented to Plaintiff and the Class, Plaintiff James Kim has been injured.

18.     Defendant Samsung Electronics America, Inc. is a corporation registered in the State of New York, with its principal executive offices at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

19.     Samsung, a wholly owned subsidiary of Samsung Electronics Co. Ltd., is a large, high-tech electronics manufacturer that produces, markets, and distributes consumer electronics products. A portion of these products are the defective Samsung branded Televisions that form the basis of the instant action.

Samsung caused said Televisions to be entered into the stream of commerce within this district, and throughout the United States as a whole.

## VENUE AND JURISDICTION

20.    This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. Plaintiffs have located thousands of complaints regarding the defective Samsung branded Televisions on the internet, and said Televisions range in price from $300 to $5000. In addition, Plaintiff and Defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

21.    Venue is proper in this District because Samsung resides in this District and conducts substantial business in this District, including the promotion, sale and marketing of its products, sufficient to render all of them within the jurisdiction of this Court. The events and conduct giving rise to the violations of law in this action constitute interstate commerce, and a significant portion thereof occurred in this District.

22.    This Court has personal jurisdiction over Samsung because it is a citizen of this state.

## SUBSTANTIVE ALLEGATIONS

### *The Design Defect*

23.    Nearly every modern consumer electronics product contains an array of various types of capacitors. These basic components are comprised of two conducting plates separated by a dialectic (i.e., non-conducting) core.  Capacitors serve a number of purposes, one of which is the smoothing of electrical current form an electronic product's power supply. By retaining and releasing small bursts of electricity, capacitors help alleviate the ripples that naturally occur in the electric current that powers a consumer electronics product. They thereby mitigate the risks associated with spikes (e.g., destruction of circuit board components) and dips (e.g., unintended shutoff) in said electric current. In addition, capacitors are also utilized in the conversion of alternating current (AC) to direct (or continuous) current (DC).

24.    As stated above, the Samsung branded Televisions that form the basis of the instant action contained power supply boards with capacitors that were not suitable for the purposes for which they were intended.

25.    The PSBs of said Televisions serve to convert the alternating current that is supplied by most household power outlets to direct (or continuous) current,

which powers the various electrical components found in televisions. In addition, PSBs also function to regulate and distribute the flow of electricity amongst a television's components. The following three photographs ([1] – [3]) depict the PSBs from, respectively, Samsung branded Television model numbers LN-T4661F (Plaintiff's defective LCD Television), HL-56A650 (hi-definition, rear-projection DLP), and HP-T4234 (hi-definition plasma Television).  Each of these televisions, as evidenced by Plaintiff's personal knowledge and numerous consumer complaints posted on the internet, has been the subject of the Design Defect inherent in the defective Samsung branded Televisions. (Please note: the capacitors in the following photographs are the standing cylindrical objects of various sizes and placements.)

   (1)  Part Number:
         **BN44-00168B**



(2)  Part Number:
     **BP44-01002A**



(3)  Part Number:
     **BN44-00161A**



25.    The Design Defect inherent in the above PSBs, and in the PSBs of the

defective Samsung branded Televisions as a whole, stems from the fact that they

contained capacitors – in particular, electrolytic capacitors – that were not designed

to handle the standard operating voltage of said PSBs. Thus, for example, on PSBs that were meant to handle a 12 volt direct current, Samsung placed capacitors that were rated for a 10 volt direct current. At very least, these capacitors should have been rated for the standard voltage of their PSB, if not higher.

26.    Thus, because the capacitors installed in the PSBs of the defective Samsung branded Televisions were underrated for the voltage that they were intended to handle, they were exposed to excess voltage for which they were not designed. This, in turn, caused the underrated capacitors to experience heightened operational temperatures and other adverse physical conditions.

27.    The lifespan of an electrolytic capacitor, like the ones found in the PSBs of the defective Samsung branded Televisions, are generally rated in terms of hours at a specific operating temperature (a function of ambient temperature, voltage, current ripple effects, and other factors). Thus, for example, the lifespan of a capacitor may be rated as "1000 hours at 100 degrees Celsius". However, the actual lifespan of an electrolytic capacitor is inversely proportional to the degree to which the actual operating temperature it experiences exceeds the operational temperature for which it was rated. Thus, because the electrolytic capacitors in the defective Televisions were subject to excess current, which in turn subjected them to excess operating temperatures, their lifespans were severely curtailed.

28.    As a result, the capacitors would lose operational efficiency and/or fail well before they could reasonably be expected to fail. In many instances, the failed capacitors would bulge outward as the excess operating temperature they experienced led to the unintended production of gases, such as hydrogen. (See photograph [4] below.) In other instances, the failed capacitors would show no outward signs of deformation on their enclosures.



(4) Bulging capacitor in a
    defective Samsung branded
    LCD Television, model
    number LN-T4061F.

27.    When the capacitors in the defective Televisions' PSBs would begin to fail or otherwise deteriorate, the Televisions would begin to exhibit the symptoms of the Design Defect described above. (Namely:  intermittent clicking noises followed by an inability to promptly turn on, and eventual failure to turn on altogether – as well as the various ancillary symptoms described by aggrieved consumers.) For, as the capacitors deteriorated, they were no longer able to

properly transmit electric current, and, and as a result, the PSBs of said Televisions were no longer able to properly convert and distribute electricity.

28.     Consumer complaints posted on the internet suggest that turning off the affected television and allowing the capacitors to cool down would temporarily alleviate the symptoms associated with the Design Defect; nevertheless, the symptoms would continue to worsen, as the affected television would eventually become completely inoperable due to a complete failure of the defective capacitors.

29.     As a result of the Design Defect inherent in the defective Samsung branded Television, Plaintiff and other Class members continue to incur onerous expenses as they are forced to either pay for the parts and labor that are necessary to repair their defective Samsung televisions once their original 12 month Parts and Labor Warranty expires, or must otherwise purchase a new television. Based upon information and belief, it costs between $200 and $600 to diagnose and repair a Samsung television afflicted by the Design Defect – an amount that sometimes exceeds, or comes close to exceeding, the current value of the defective television.

*Samsung Knew and Continues to Know of the Design Defect*

30.     Throughout the Class period, the defective Samsung branded Televisions were sold by major "brick and mortar" retailers such as Best Buy,

Target, and Wal-Mart; on-line retailers such as Newegg.com, Amazon.com, and Buy.com; and whole-sale clubs such as Costco and Sam's Club.

31.     As alleged more thoroughly above, Samsung represented the lifespans of its defective Televisions to be significantly greater than they were in actuality. Due to the Design Defect, these Televisions often exhibited adverse symptoms and/or failed to operate well before they could be reasonably expected to do so.

32.     Based upon information and belief, Samsung was aware of the Design Defect by virtue of its design and quality control testing of the defective Televisions. Samsung knew that they were installing capacitors in the PSBs of these Televisions that were underrated for the voltages that they would encounter in the normal, day-to-day operation of said Televisions. Moreover, Samsung knew that fitting the PSBs of these Televisions with underrated capacitors would expose those capacitors to excess voltage, thereby increasing their operating temperature, and significantly decreasing their lifespans.

33.     Furthermore, Samsung knew that by decreasing the expected lifespans of the electrolytic capacitors in said Televisions, it was, by extension, severely decreasing the expected lifespans of the PSBs in those Televisions. Since the PSB of a television is a crucial and indispensable component of that television – one whose failure signifies failure of the television as a whole – Samsung also knew

that the lifespans of its Televisions were severely curtailed due to the Design Defect, and that these adverse effects could have been avoided had it installed proper capacitors in its PSBs.

34.    Indeed, it is almost unthinkable that Samsung could have *not* known of the Design Defect when consumers, who possess significantly less expertise and resources than Samsung, have been able to diagnose the Design Defect – as well as possible solutions; namely, the replacement of the defective capacitors. (*See* "Consumer Complaints" below).

35.    In addition, based upon information and belief, Samsung has instated a silent recall of at least some models of the adversely effected Televisions, thereby further indicating that it is cognizant of the Design Defect and its implications (the "Silent Recall"). Consumer complaints show that Samsung customer service representatives are well aware of the Design Defect inherent in the Televisions, and that they have received a sizable number of calls regarding televisions that suffer symptoms related to the Design Defect. The same complaints indicate that after sufficient handwringing, Samsung representatives will offer the consumer an extension of his or her warranty, a free-of-charge repair of the adversely effected television, or both.

36.    Nevertheless, these case-by-case rectifications cannot possibly mitigate the injuries caused to the Class by the known, but unrepresented, Design Defect inherent in the defective Samsung branded Televisions – for, at very least, they do not apply to all affected models, and require considerable and unexpected efforts on the part of consumers.

37.    Finally, there is the possible connection between the defective electrolytic capacitors found in the defective Samsung Televisions and the so called "capacitor plague".  According to anecdotal evidence and industry reports[4], from the late 1990s to the early 2000s, a barrage of improperly manufactured electrolytic capacitors flooded the market.  The sources of these defective capacitors, according to said reports, were Taiwanese manufacturers that had received an incomplete electrolyte formula through a string of corporate espionage that spanned from Japan to mainland China.  While it is unclear whether or not the defective capacitors in the Samsung branded Televisions are a product of the "capacitor plague", the symptoms experienced by purchasers of the defective Televisions (e.g., bulging capacitor enclosures) are reminiscent of those that afflict the capacitors of the "capacitor plague".

---

[4] *See* http://www.dfrsolutions.com/pdfs/2004_Electrolyte_Hillman-Helmold.pdf;
http://asia.cnet.com/reviews/pcperipherals/0,39051168,39289727-2,00.htm;
http://news.cnet.com/PCs-plagued-by-bad-capacitors/2100-1041_3-5942647.html.

38.     If the defective Samsung branded Televisions do indeed contain the products of the "capacitor plague", then Samsung undoubtedly knew that it was installing defective capacitors in said Televisions – for, even before the beginning of the Class period, the ramifications of the "capacitor plague" were well known throughout the electronics industry.

***Samsung Has Failed to Inform Consumers of the Design Defect***

39.     The existence of the Design Defect is a materially relevant fact that is highly pertinent to the reliability and normal operation of the defective Samsung branded Televisions.

40.     As alleged above, Samsung has received thousands of consumer complaints with respect to the Design Defect in its Televisions. Nevertheless, despite its clear knowledge of the Design Defect, and its tacit admission of the Design Defect by way of the Silent Recall, Samsung has not informed consumers of the Design Defect at either the point of sale or thereafter, nor has it publicly recalled the defective Televisions.

41.     Moreover, none of Samsung's advertising and marketing materials make any mention of the Design Defect, despite the fact that Samsung, as alleged above, highlights the purportedly lengthy lifespans of the defective Televisions.

42. Had Plaintiff and the Class known about the Design Defect, they would not have purchased their defective Samsung branded Televisions; or, at very least, would have only purchased said Television at severely reduced prices.

43. In instances where the defective Televisions failed due to the Design Defect inherent in their PSBs after more than 12 months of ownership – i.e., after the expiration of the Televisions' 12 months Parts and Labor warranties – Samsung has caused members of the Class to incur hundreds of dollars of parts, service, and labor fees to have their PSBs repaired or replaced.

44. As a result, Samsung's wrongful acts have caused Plaintiff and the Class to incur ascertainable losses with respect to the cost of repair, replacement, and loss and use and value of their defective Samsung branded Televisions.

***Consumer Complaints***

45. The following is a listing of consumer complaints with respect to the defective Samsung branded Televisions. Only a select few have been included; however, even a cursory search will uncover hundreds, and perhaps thousands of such complaints posted on various internet-based forums and consumer electronics minded websites. To the degree possible, only formatting edits have been made to the original posting.

| Source: | "Quick Rundown-My TV (Samsung LN46A750R) starts shutting itself on and off all by itself last Sunday, about 6 months past the warranty expiration date of 12 months. I wont go into my battles with Samsung, but after researching the internet and finding thousands of others with similar problems with Samsung LCDs, I made a startling discovery. Basically, they took Samwha WB series (which according to Samwhas own site, are obsolete since 1999) capacitors and installed them on the power supply. These power supply capacitors have a very high tendency to blow up in these LCD units, but Samsung will admit NOTHING. They are abusing the high failure rate of these to sucker people into extended warranty and expensive repairs." |
|---|---|
| http://www.badc aps.net/forum/sh owthread.php?t= 7403&highlight= samwah | |
| **Date Posted:** | |
| 07/09/2009 | |
| **Source:** | "So I have Samsung LN4061 that I bought in 2007. I noticed recently that that it's taking longer and longer to turn on after I hit the power button, whether it be the remote or TV power button. Sometimes there are anomolies on the screen, pink and green snowy effect. A quick turn off and turn on usually fixes it until the next time. |
| http://forums.ana ndtech.com/show thread.php?t=203 3121 | |
| **Date Posted:** | So I started doing some research on this problem through Google and found that this phenomenon happens all the time to Samsung LCD TVs made from 2004 to 2008. It appears that the caps they used, there are 5 of them it seems, are under powered for the power supply. And they start to bulge and burst just like they do on motherboards. I see that most places want around $400.00 to $500.00 to replace these caps. It looks like Samsung decided to use 10 w when the power supply requires 12 at a minimum. They last around 2 years before bulging and bursting. And the TV will not turn on eventually." |
| 12/15/2009 | |
| **Source:** | "Last March of 2008 I was so excited to get my new Samsung LN-T4065F 40 inch LCD TV. The looks of the LCD set is awesome, watching it on High Def is just amazing. But it only took 1 year and 3 months for it to go bad(Yeah after my warranty expired. What a bummer!). The initial problem was when you turn on the device it |
| http://www.crove an.net/samsung- lcd-tv-power-up- problem | |

| | |
|---|---|
| **Date Posted:**<br><br>8/20/2009 | takes awhile for it to come on.  At first, I thought it was my Direct TV DVR that was causing the power up delay because every time when it come on the resolution of my TV goes from 1080i to 480i.  But after few weeks the LCD TV gets worst, clicking starts to come in and TV turns on with this weird colored background and I just got tired of it and started searching about it over the internet. After that time, I am for sure of the problem and there's an abundant of information about it over the internet." |
| **Source:**<br><br>http://forums.cne<br>t.cco/7723-<br>13973_102-<br>400908.html<br><br>**Date Posted:**<br><br>7/10/2010 | "I am really dissapointed not only with the quality of the product but also with the service that i am receiving from Samsung and its partners to try to get a resolution for my problem.<br>I just bought my TV approximately 1 year and 2 months ago and i am already having this problem. I turn on the TV and it turns off with the beeping sound repeating on and off. I have done a lot of research online and it seems that the problem is the capacitor which is apparently a manufacturing problem from Samsung and it is covered free of charge." |
| **Source:**<br><br>http://forums.bes<br>tbub.com/t5/TV-<br>Home-<br>Theater/Samsung<br>-LCD-TV-<br>Clicks-on-and-<br>off-repeatedly-<br>lnt4671fx-xaa/td-<br>p/29879<br><br>**Date Posted:**<br><br>5/29/2009 | "I bought the Samsung LNT4671FX/XAA about 13 months ago. I did not purchase the extended warranty because I figured that if I spent the extra money to buy a "quality" item then I shouldn't have to worry about getting an extended warranty. Harrower, 13 months after I bought the TV it won't turn on anymore. I just clicks on and off and doesn't produce a picture. I have spoke with Samsung customer service several times and they are no help at all. From reading forums I believe the problem is the power board, but the Samsung technical support isn't qualified to tell me the part number so that I can order it. If anyone here has faced the same problem, or can give me the part number for the power board it would be greatly appreciated." |

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action both individually and as a class action pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and 23(b)(3) against Samsung, on their own behalf and on the behalf of a Class consisting of all consumers in the United States who purchased one or more of the defective Samsung branded Televisions during the Class Period.

47.     Members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff estimates that there are thousands of members of the Class.

48.     There are questions of law and fact common to all the members of the Class that predominate over any questions affecting only individual members, including:

    a.  Whether the alleged Design Defect exists amongst the Samsung branded Televisions;

    b.  Whether Samsung knew of, or recklessly disregarded the existence of the alleged Design Defect at the point of sale for the defective Televisions purchased by Plaintiff and the Class;

     c.   Whether, by virtue of Samsung's alleged misconduct, Plaintiff and the Class are entitled to damages, restitution, equitable relief, injunctive relief, or other relief, and the amount and nature of such relief.

49.    Plaintiff's claims are typical of the claims of the Class. Plaintiff has no interests antagonistic to those of the Class, and Samsung has no defenses unique to the individual Plaintiff.

50.    Plaintiff will fairly and adequately protect the interests of the Class and has retained attorneys experienced in class and complex litigation.

51.    A class action is superior to all other available methods for this controversy because: i) the prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; ii) the prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Samsung; iii) Samsung acted or refused to act on grounds generally applicable to the Class; and iv) questions of law and fact common to members of the Class predominate over any questions affecting only

individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

52.    Plaintiff does not anticipate any difficulty in the management of this litigation. Samsung has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## APPLICATION OF NEW JERSEY LAW

53.    Plaintiffs, on behalf of themselves and all others similarly situated, seek the application of New Jersey law to all of the claims asserted on behalf of the nationwide Class.

54.    The application of New Jersey law is appropriate because the deceptive and unlawful conduct that forms the basis of Plaintiff's claims emanates from New Jersey, where Samsung has its principal place of business. New Jersey has significant contacts and/or a significant aggregation of contacts to claims asserted in this litigation, thereby creating compelling state interests that ensure that the choice of New Jersey law on an extra-territorial basis is appropriate in this case. The majority of Samsung officers are located in New Jersey and Samsung's marketing and advertising efforts were likely created in and orchestrated from the location of its present headquarters in New Jersey.

55.     New Jersey has a materially greater interest than any other State in regulating unlawful conduct by Samsung and in enforcing the rights and remedies granted to United States consumers, including New Jersey residents, under the New Jersey laws invoked by this Class Action Complaint. These rights and remedies further strong fundamental public policies of the State of New Jersey.

## TOLLING THE STATUTES OF LIMITATIONS

56.     The causes of action alleged herein accrued upon discovery of the latently defective nature of the Samsung branded Televisions. Because the Design Defect alleged herein is latent and because, *inter alia*, Samsung took steps to conceal the true character, nature, and quality of the defective Televisions, Plaintiff and other members of the Class did not discover and could not have discovered the problems and defects alleged herein through the exercise of reasonable diligence.

57.     Any applicable statutes of limitations have been tolled by Samsung's knowing and active concealment and denial of the facts as alleged herein. Plaintiffs and the other members of the Class have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their parts. Plaintiffs and Class members could not reasonably have discovered the defects and problems alleged herein because of Samsung's fraudulent concealment.

58.     Samsung was and is under a continuous duty to disclose to Plaintiff and the other members of the Class the true character, quality, and nature of the Samsung branded Televisions. Samsung knowingly, affirmatively, and/or actively concealed, and continues to conceal, the true character, quality and nature of said Televisions.

59.     Samsung knew or should have known that Plaintiff and the other Class members would reasonably rely on Samsung's knowing, affirmative, and/or active concealment. Based on the foregoing, Samsung is estopped from relying on any statutes of limitations in defense of this action.

## COUNT I

**(By Plaintiff, Individually, And On Behalf Of All Members Of The Class In All 50 States Who Purchased A New Samsung Television During the Class Period Against Samsung For Violations Of The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq.)**

60.     Plaintiff hereby repeats and realleges the preceding paragraphs as if fully set forth herein.

61.     This count is brought against Samsung, pursuant to the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq.

62.     At all times relevant herein, New Jersey's Consumer Fraud Act was in effect. The Act prohibits any "[f]raud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice."

63.    Further, the Act prohibits any "knowing, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission in connection with the sale of any merchandise ...." N.J. Stat. Ann. § 56:8-2.

64.    Plaintiff and the other Class members reasonably expected their Samsung Televisions to last well beyond the one-year warranty. Samsung represents that both its plasma and LCD Televisions will have a half-life of up to 60,000 hours of viewing.

65.    At all times during the Class Period, Samsung developed, manufactured, marketed and sold the defective Samsung branded Televisions.

66.    The Televisions are defective because the capacitors installed in their PSBs are underrated for the voltage that they were intended to handle, thereby exposing them to excess voltage for which they were not designed. This, in turn, causes the underrated capacitors to experience heightened operational temperatures and other adverse physical conditions, limiting their lifespans, and eventually causing their premature failure. When the capacitors fail, so do the PSBs. And, as a result, the Televisions fail as well.

67.    Samsung had knowledge of the Design Defect at least as early as 2004 from pre-market testing, numerous consumer complaints and warranty claims relating to the defective Televisions they manufactured, articles regarding

defective capacitors published and readily available throughout the industry, and as evidenced by the Silent Recall.

68.    Plaintiff and the other Class members were not aware of the fact that the Samsung branded Televisions were defective at the time of sale.

69.    Despite Samsung's knowledge or prior notice of the Design Defect, it omitted this material fact with the intent that Plaintiff and Class members act upon this material omission and continued to place defective Televisions into the stream of commerce.

70.    Samsung intentionally concealed information about the Design Defect from Plaintiff and the other Class members for the purpose of maximizing profit.

71.    If Plaintiff and the other Class members knew that the Televisions were defective, they would not have purchased them because the existence of the defect was a material fact to the transaction. Samsung, at all relevant times, knew or should have known that Plaintiff and the other members of the Class did not know or could not have reasonably discovered the Design Defect prior to their purchases.

72.    By paying monies for these defective Televisions, Plaintiff and the other members of the Class have suffered an ascertainable loss.

73.    Samsung's conduct constitutes a violation of New Jersey's Consumer Fraud Act and entitles Plaintiff and the other members of the Class to relief under

this statute of statutory and actual damages, injunctive relief, and attorneys' fees and costs.

## COUNT II

**(By Plaintiff, Individually And On Behalf Of All Members Of The Class In All 50 States Who Purchased A New Samsung Television During the Class Period Against Samsung For Breach Of The Implied Warranty Of Merchantability, Pursuant To N.J. Stat. § 12A: 2-314)**

74.     Plaintiffs hereby repeats and realleges the preceding paragraphs as if fully set forth herein.

75.     This count is brought against Samsung for breach of the implied warranty of merchantability, pursuant to N.J. Stat. § 12A: 2-314, which was in effect at all relevant times herein.

76.     The Televisions are "goods" within the meaning of that term under the New Jersey statute.

77.     Samsung is a "merchant" within the meaning of that term under the New Jersey statute because Samsung sells and manufactures the Televisions.

78.     The Implied Warranty of Merchantability, codified under N.J. Stat. § 12A: 2-314, requires, among other things, that the Televisions pass without objection in the trade and are fit for the ordinary purposes for which the Televisions are used.

79.     The Samsung branded Televisions are defectively designed because of the Design Defect inherent in their PSBs, which is more thoroughly described above.

80.     As a result of the Design Defect, the Samsung Televisions were not merchantable at the time of sale and do not function in their ordinary capacity.

81.     Samsung's limits on its express warranty are unconscionable. Samsung knowingly sold a defective product without conspicuously informing consumers and concealing material information about the Design Defect. Samsung possessed actual superior knowledge of the Design Defect at least as early as 2004 based on pre-market testing, numerous consumer complaints and warranty claims relating to the defective Televisions they manufactured, and articles regarding defective capacitors known throughout the industry.

82.     The time limits contained in Samsung's written limited warranties are grossly inadequate to protect Plaintiff and the other members of the Class. Among other things, Plaintiff and the Class had no meaningful choice in determining those time limitations; the warranties were written by Samsung without input of the Plaintiff or Class members; the terms of the limited warranties unreasonably favored Samsung by creating a one-year warranty limitation on a product consumers could reasonably expect to last up to 100,000 hours (i.e., double their average half-lives); a gross disparity in bargaining power existed as between

Samsung and Class members; and Samsung knew or should have known that its Televisions were defective at the time of sale and would fail well before the end of their useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

83. The Design Defect in the Samsung Televisions rendered them nonmerchantable because they could not be used for their ordinary purposes and thereby proximately caused the economic damages suffered by Plaintiff and the Class. The amount of damages will be ascertained at trial.

## COUNT III

**(By Plaintiff James Kim, Individually, And On Behalf Of All Members Of The Class Who Purchased A New Samsung Branded Television In The State Of Pennsylvania During the Class Period Against Samsung For Breach Of The Implied Warranty Of Merchantability, Pursuant To 13 Pa. Cons. Stat. § 2314, et seq.)**

84. Plaintiff James Kim hereby repeats and realleges the foregoing as if fully set forth herein.

85. This count is brought against Samsung for breach of the Implied Warranty of Merchantability, pursuant to 13 Pa. Cons. Stat. § 2314, et seq., which was in effect at all relevant times herein and requires, among other things, that the Samsung Televisions pass without objection in the trade and are fit for the ordinary purposes for which the Televisions are used.

86.     The Televisions are "goods" within the meaning of the Pennsylvania statute.

87.     Samsung is a "merchant" within the meaning of the Pennsylvania statute.

88.     The Televisions are defective because of the Design Defect inherent in their PSBs, which is more thoroughly described above.

89.     As a result of the Design Defect, the Samsung Televisions were not merchantable at the time of sale and do not function in their ordinary capacity.

90.     The time limits contained in Samsung's written limited warranties are grossly inadequate to protect Plaintiff and the other members of the Class. Among other things, Plaintiff and the Class had no meaningful choice in determining those time limitations; the warranties were written by Samsung without input of the Plaintiff or Class members; the terms of the limited warranties unreasonably favored Samsung by creating a one-year warranty limitation on a product consumers could reasonably expect to last up to 100,000 hours (i.e., double their average half-lives); a gross disparity in bargaining power existed as between Samsung and Class members; and Samsung knew or should have known that its Televisions were defective at the time of sale and would fail well before the end of their useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

## NOTICE OF ATTORNEY GENERAL OF ACTION

91.     Pursuant to N.J. Stat. Ann. §56:8-20, a copy of the Complaint has been mailed to the Attorney General, Administrators, Commissioners, or other officers as required by law, upon and at the time of filing the Complaint.

### <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff prays that this Court:

a.     Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint the named Plaintiff as Class representative, and appoint the undersigned as class counsel;

b.     Order Samsung to pay Plaintiff and the other members of the Class an amount of actual and statutory damages, restitution and punitive damages in an amount to be determined at trial;

c.     Issue an injunction or other appropriate equitable relief requiring Samsung to recall or otherwise adequately repair the defective Samsung branded Televisions, and/or extend the warranty period to a reasonable period of time;

d.     Issue an injunction preventing Samsung from continuing to manufacture and sell the defective Televisions without disclosing or fixing the Design Defect;

e.     Grant such other relief as may be just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: November 10, 2010

Respectfully Submitted,

Laurence M. Rosen, Esq.
**THE ROSEN LAW FIRM, P.A.**
236 Tillou Road
South Orange, New Jersey 07079
Tel.: (973) – 313 – 1887
Fax: (973) – 833 – 0399
E-mail: lrosen@rosenlegal.com